**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**CLIFFORD AND LOVETA PRUITT,** *et al.*                    **PLAINTIFFS**

**VS.**                    **4:12-CV-00690-BRW**

**SOUTHWESTERN ENERGY COMPANY**                    **DEFENDANT**

## ORDER

Pending is Defendant Southwestern Energy Company's ("SEC") Motion for Partial

Dismissal of Amended Complaint (Doc. No. 20).  Plaintiffs have responded,[1] and SEC has

replied.[2]  For reasons set forth below, the Motion is DENIED.

## I.    BACKGROUND

Seventeen plaintiffs sued SEC over its operation of two natural gas compressor and

transmission stations -- the Puma North and the Scotland CPF II -- claiming strict liability,

nuisance, trespass, and negligence.[3]  SEC requested that the claims against the Scotland CPF II

be severed from those against the Puma North.  I granted SEC's request and removed the

Scotland CPF II Plaintiffs from that suit.  The removed Plaintiffs had 30 days to file a new

complaint.[4]  The eight removed Plaintiffs[5] then brought this suit, and in addition to the tort-law

---

[1]Doc. No. 22.

[2]Doc. No. 24.

[3]*Smith v. Sw. Energy Co.*, Case No. 4:12-CV-00423-BRW (E.D. Ark. Aug. 27, 2012) (Doc. No. 9).

[4]*Smith*, Case No. 4:12-CV-00423-BRW (Doc. No. 17).

[5]The eight removed Plaintiffs are Clifford and Loveta Pruitt; Allen and Tammy Peterson; Jeffrey and Kimberly Wyborny; Virginia Mills; and Molly Stone.

claims regarding the Scotland CPF II, six Plaintiffs[6] asserted various contract-related claims based on oil and gas leases.[7]

SEC answered the Complaint and moved to dismiss under Rule 12(b)(6) Plaintiffs' strict liability claims, claims under the Arkansas Deceptive Trade Practices Act, and claims arising under the oil and gas leases.[8]  Rather than respond to the Motion, Plaintiffs amended their Complaint, which they could do as a matter of right.[9]  Accordingly, I dismissed SEC's Motion to Dismiss without prejudice as moot.[10]

SEC then answered the Amended Complaint, and moved to dismiss under Rule 12(b)(6) and Rule 21 Plaintiffs' strict liability claims, claims under the Arkansas Deceptive Trade Practices Act, and claims arising under the oil and gas leases.[11]

## II.     DISMISSAL UNDER RULE 21

SEC asserts that all of Plaintiffs' claims arising under the oil and gas leases should be dismissed from this action because those claims were improperly joined with Plaintiffs' tort-law claims.[12]

---

[6]The six removed Plaintiffs asserting contract-related claims are Clifford and Loveta Pruitt; Allen and Tammy Peterson; and Jeffrey and Kimberly Wyborny.

[7]Doc. No. 1.

[8]Doc. Nos. 12, 13.

[9]Doc. No. 17; *see also* Fed. R. Civ. P. 15(a)(1)(B) (providing that a party may amend its pleading once as a matter of course within 21 days of service of a motion under Rule 12(b)).

[10]Doc. No. 18.

[11]Doc. Nos. 19, 20.

[12]Doc. No. 21.

In diversity cases, such as this one, joinder is governed by federal law.[13]   Federal Rule of

Civil Procedure 20(a)(1) allows multiple plaintiffs to join in a single action if (A) they assert

claims "with respect to or arising out of the same transaction, occurrence, or series of

transactions or occurrences," and (B) "any question of law or fact common to all plaintiff will

arise in the action."[14]   In determining whether joinder is proper under Rule 20, the Eighth Circuit

Court of Appeals has advised that the term "transaction" should be applied broadly, and stated as

follows:

> "Transaction" is a word of flexible meaning. It may comprehend a series of many
> occurrences, depending not so much upon the immediateness of their connection as
> upon their logical relationship.
>
> Accordingly, all "logically related" events entitling a person to institute a legal action
> against another generally are reaagrded as comprising a transaction or occurrence.
> The analogous interpretation of the terms used in Rule 20 would permit all
> reasonably related claims for relief by or against different parties to be tried in a
> single proceeding.  Absolute identity of all events is unnecessary.[15]

Here, Plaintiffs' claims arise from the same series of transactions -- the oil and gas leases.

The lease claims are based on a clause in the leases that allow the lessee to deduct gas

compression and transmission expenses from Plaintiffs' royalty payments, and the tort-law

claims arise from the operation of the compressor station, the construction of which was

necessitated by the lease agreement.  Further, at least one question of law or fact, common to all

Plaintiffs, will arise in the action -- namely, whether SEC's operation of its compressor station

---

[13]See *Provident Tradesmens Bank & Trust Co. v. Patterson*, 88 S. Ct. 733 (1968).

[14]Fed. R. of Civ. P. 20(a)(1).

[15]*Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (citations omitted).

was tortuous and caused Plaintiffs' injury.[16]   Accordingly, SEC's Motion to Dismiss under Rule 21 is DENIED.

## III.   DISMISSAL UNDER RULE 12(b)(6)

### A.   Legal Standard

When ruling on a motion under Rule 12(b)(6), the Court must "accept as true all of the factual allegations contained in the complaint, and review the complaint to determine whether its allegations show that the pleader is entitled to relief."[17]   Conclusory allegations "are not entitled to the assumption of truth."[18]   However, all reasonable inferences from the complaint must be drawn in favor of the nonmoving party.[19]

A motion to dismiss should not be granted merely because it does not precisely state all of the elements giving rise to a legal basis for recovery.[20]   The complaint need only to contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[21]   "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."[22]   "While a complaint attacked by a Rule 12(b)(6) motion to

---

[16]See *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010) (holding that joinder is encouraged whenever possible).

[17]*Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).

[18]*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

[19]*Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004).

[20]*Schmedding v. Tnenmec Co. Inc.*, 187 F.3d 862, 864 (8th Cir. 1999).

[21]*Id.* (quoting Fed. R. Civ. P. 8(a)).

[22]*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (overruling language from *Conley v. Gibson*, 78 S. Ct. 99, 102 (1957), which stated, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove not set of facts in support of his claim which would entitle him to relief").

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[23]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[24]  Under the *Twombly* "plausibility standard," the allegations in Plaintiffs' Complaint must be evaluated to determine whether they contain facts sufficient to "nudge[] [his] claims across the line from conceivable to plausible."[25]

### B.     Oil & Gas Lease Claims

SEC argues that the claims against it regarding the oil and gas leases -- breach of contract, unjust enrichment, breach of statutory duty of good faith prudent operator standard, and treble damages and attorney's fees for underpayment -- should be dismissed because "SEECO, Inc., or its predecessor-in-interest" is a party to the leases, not SEC.[26]  SEC states further that "[SEC] is not now, nor has it ever been, a party to any of the oil and gas leases."

This claim, however, was not asserted in SEC's initial Answer or its first Motion to Dismiss, and contradicts its previous position.  For example, SEC's initial Answer states as follows:

> 24.    [SEC] admits that it executed Oil and Gas Leases with Plaintiffs Peterson, Pruitt, and Wyborny, and admits that these Plaintiffs have received royalty payments.

---

[23]*Id.* at 1964-65 (citations omitted).

[24]*Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007)).

[25]*Id.* at 1974.

[26]Doc. No. 21.

25.     [SEC] admits that it deducted costs of compression and other legitimate expenses from the proceeds paid to Plaintiffs Peterson, Pruitt, and Wyborny pursuant to the terms of the oil and Gas Leases executed by these Plaintiffs.

26.     [SEC] admits that the terms of the Oil and Gas Leases executed by Plaintiffs Peterson, Pruitt, and Wyborny grant it the right to use, free of cost, gas found on the leased property for its operations.[27]

Furthermore, SEC's first Motion to Dismiss states as follows:

But these new allegations ignore the fact that Plaintiffs Pruitt, Peterson, and Wyborny have each executed oil and gas leases that grant [SEC] the rights to "deduct all reasonable gathering, transportation, treatment, compression, processing and marketing costs" and to "use, free of cost, gas, oil and water found on said land for its operations."[28]

Moreover, SEC's Brief in Support of its Motion states, in relevant part, as follows:

But the Leased Plaintiffs have all executed oil and gas leases granting [SEC] the rights to "deduct all reasonable gathering, transportation, treatment, compression, processing and marketing costs" and to "use, free of cost, gas, oil and water found on said land for its operations." [SEC] cannot be held liable for doing what it has express permission of the interest-owner to do.

The language of the leases at issue here is clear and unambiguous. Paragraph 2 of the lease contracts (signed by each of the relevant Plaintiffs) explicitly allows [SEC] to deduct the reasonable costs of the items mentioned, which include gathering, transportation, treatment, compression, processing, and marketing. Such a clause in a lease is not unusual.

Further, Paragraph 9 of the leases also explicitly entitled [SEC] to use gas from Plaintiffs' property free of cost in connection with its operations. There is no requirement in the leases, or in statutory authority, that [SEC] must credit Plaintiffs for such use.

As set forth above, however, the gas leases that Plaintiffs signed unambiguously entitle [SEC] to deduct compression costs from royalty payments and use gas from Plaintiffs' property free of cost. . . . To the extent that it deducted compression costs or used gas from the leased property, [SEC] was simply exercising its contractual rights.

---

[27]Doc. No. 12.

[28]Doc. No. 13.

> But the Leased Plaintiffs ignore the fact that they each signed lease contracts
> -- which are conspicuously absent from the Complaint -- that specifically
> allow [SEC] to calculate royalties in the manner they now complain about.[29]

In response, Plaintiffs argue that because these statements are clearly contrary to SEC's earlier statements, SEC is barred from maintaining this position under the doctrine of judicial estoppel and the rule against inconsistent positions.[30]  Although I tend to agree with Plaintiffs to some extent, I am not satisfied that SEC's inconsistencies warrants barring them from asserting this new position.  On the other hand, I believe it would be unfair to Plaintiffs to address the merits of SEC's new position without first giving Plaintiffs a chance to amend their Complaint.

Accordingly, SEC's Motion, as it pertains to Plaintiffs' lease claims, is DENIED without prejudice, and Plaintiffs are granted 21 days from the date of this order to amend their Complaint, if they deem necessary.

## C.     Strict Liability Claims

"[A]n activity is ultra-hazardous if it (a) necessarily involves a risk of serious harm to the person or chattels of others which cannot be eliminated by the exercise of the utmost care and (b) is not a matter of common usage."[31]  Whether an activity involves a serious risk or harm that cannot be eliminated by exercising utmost care -- whether an activity is ultra-hazardous -- is a question of law.[32]

---

[29]Doc. No. 14.

[30]Doc. No. 23.

[31]*Zero Wholesale Gas Co., Inc. v. Stroud*, 264 Ark. 27, 31 (1978).

[32]*Id.* at 31; see also *Tucker v. Sw. Energy Co.*, Case Nos. 1:11-CV-00044-DPM, 1:11-CV-00045-DPM, 2012 WL 528253 (E.D. Ark. Feb. 17, 2012).

Here, Plaintiffs allege that the compressor station emits large amounts of several gases, including methane and hydrogen sulfide.[33]  Plaintiffs also allege that operators at the compressor station use windsocks to alert them to the direction the gases are traveling in order to avoid contact.[34]  Whether the activities taking place at the compressor station, including the gases that Plaintiffs assert are being emitted, are ultra-hazardous, or have caused injuries to Plaintiffs in this case, may turn on evidence that has yet to be developed, such as expert testimony.  Additionally, SEC has not shown that the actions taking place at the compressor station are of common usage.  Therefore, at this time, dismissal of Plaintiffs' strict liability claim is improper.

**D.**     **Claims under Arkansas Deceptive Trade Practices Act**

Plaintiffs' Amended Complaint states that SEC violated Sections 4-88-107 and 108 of the Arkansas Deceptive Trade Practices Act ("ADTPA").[35]

Section 107 provides eleven unlawful trade practices; however, the Amended Complaint does not state which section SEC allegedly violated.  As best I can tell, it appears that Plaintiffs' Section 107 claims are brought under subsections (a)(8) and (10).

Under Section 107(a)(8), it is deceptive and unconscionable, and therefore unlawful, to "[k]nowingly tak[e] advantage of a consumer who is reasonably unable to protect his or her interest because of . . . ignorance, . . . inability to understand the language of the agreement, or a similar factor."[36]  Under Section 107(a)(10), it is unlawful to engage in an "unconscionable, false,

---

[33]Doc. No. 17.

[34]*Id.*

[35]*Id.*

[36]Ark. Code Ann. § 4-88-107(a)(8).

or deceptive act or practice in business, commerce, or trade. . . ."[37]  The Arkansas Supreme Court has held that "an unconscionable act is an act that affronts the sense of justice, decency, and reasonableness."[38]

Section 108 provides that, in connection with the sale or advertisement of any good or service, it is unlawful for any person to (1) use deception, fraud, or false pretenses; or (2) conceal, suppress, or omit a material fact with the intent that others rely on it.[39]

Here, SEC argues that dismissal of Plaintiffs' ADTPA claims under Rule 12(b)(6) is proper for two reasons.  First, SEC contends that the claims must fail because they are entirely dependant on Plaintiffs' objections to the deduction of expenses related to compression activities from their royalty payments, and the lease expressly provides for such rights.[40]  Second, SEC argues that the claims fail because they were not pled with sufficient particularity, required by the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

SEC's first argument misses the mark.  It appears that the parties do not dispute that, under the leases, the lessee is entitled to deduct from Plaintiffs' royalty payments "all *reasonable* gathering, transportation, treatment, compression, processing and marketing costs that are incurred by Lessee in connection with the sale of such gas."[41]  According to Plaintiffs, however, the costs deducted and the manner in which it was done, was much less than reasonable.

---

[37]Ark. Code Ann. § 4-88-107(a)(10).

[38]*Baptist Health v. Murphy*, 365 Ark. 115, n.6 (2006) (quoting *Black's Law Dictionary* 1561 (8th ed. 2004)).

[39]Ark. Code Ann. § 4-88-108.

[40]Doc. No. 21.

[41]Doc. No. 21, Ex. A (emphasis added).

The Amended Complaint alleges that SEC exclusively hired three companies to perform its gathering, cleaning, and compressing services:  DeSoto Gathering Company, SEECO, and Midstream Services Company.[42]  These companies are wholly-owned subsidiaries of SEC -- a fact that SEC allegedly concealed from Plaintiffs.  This was done, according to Plaintiffs, to secretly increase SEC's profits by increasing the profits of its wholly-owned subsidiaries, while at the same time decreasing the amount of royalties paid to Plaintiffs by SEC.

Specifically, Plaintiffs claim that the charges for gathering, cleaning, and compressing services were artificially inflated and did not represent the actual cost for the services rendered.[43] SEC inflated the service charges by only contracting these services out to its wholly-owned subsidiaries.  Without any outside competition, these wholly-owned subsidiaries would then charge SEC unreasonably high rates for their services, which SEC knowingly paid.  Then, SEC shifted the inflated costs to Plaintiffs by forcing them to pay for the service charges -- citing as its basis, the clause in the oil and gas leases that allows the lessee to deduct the costs for these services from Plaintiffs' royalty payments.  This conduct, according to Plaintiffs, constitutes self-dealing on the part of SEC, and renders the leases unconscionable, all in violation of the ADTPA.[44]

Taken as true, these facts state a plausible claim for relief under the ADTPA.  Moreover, the factual allegations in the Amended Complaint square with the heightened pleading

---

[42]Doc. No. 17.

[43]*Id.*

[44]*Id.*

requirements of Rule 9(b).[45]  Accordingly, SEC's Motion in regards to Plaintiffs' ADTPA claims

is DENIED.

## CONCLUSION

Based on the findings of fact and conclusions of law above, SEC's Motion to Dismiss

(Doc. No. 20) is DENIED.  Additionally, Plaintiffs are granted 21 days from the date of this

Order to amend their Complaint.

IT IS SO ORDERED this 13th day of February, 2013.


/s/Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

[45]See *JMAR Exp., Inc. v. Peterbilt of Memphis, Inc.*, No. 4:10-CV-01231-BRW, 20120
WL 3156858 (E.D. Ark. Aug. 3, 2012) ("Under Rule 9(b) of the Federal Rules of Civil
Procedure, fraud must be plead specifically enough to answer the 'who, what, where, when, and
how' of the alleged fraud.") (citations omitted).